UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WINCHESTER GLOBAL TRUST
COMPANY LIMITED, as Present Trustee
of The Panda Trust,

      Plaintiff,

vs.

DARREN NEIL MASTERS, SN-SCP, LLC,
CW FINANCIAL CONSULTING, LLC,
GRANITE INVESTMENTS GLOBAL US,
LLC, RENAISSANCE CONSULTING FL,
LLC, RENAISSANCE CONSULTING,
LLC and STEVEN LIKOS,

      Defendants.

_____/

Case No.:

**COMPLAINT**
**<u>INTRODUCTION</u>**

Plaintiff, Winchester Global Trust Company Limited as the Trustee of The Panda Trust ("Winchester"), files suit against Defendants for misappropriating millions of dollars destined to The Panda Trust monies that were earmarked for an insurance policy.  Instead of making it into the hands of insurance company representatives, the monies were sent to Defendant Renaissance Consulting, LLC and Steven Likos who wrongfully permitted Masters and the other Defendants to use the monies for purchasing personal items, such as a villa in Naples.  Upon

1

information and belief, the luxurious multi-million dollar villa below is in the name of Master's entity, Defendant, Granite Investment Global US, LLC and was purchased with monies from The Panda Trust:



Despite acknowledging that the monies were wrongfully taken, to date, Defendants have refused to return The Panda Trust monies to Winchester, the Trustee of The Panda Trust.

As a result, Plaintiff files this Complaint against Defendants, Darren Neil Masters ("Masters"), SN-SCP, LLC ("SN-SCP"), CW Financial Consulting, LLC ("CW Financial"), Granite Investments Global US, LLC ("GIG"), Renaissance Consulting FL, LLC ("Renaissance FL"), Renaissance Consulting LLC ("Renaissance LLC"), and Steven Likos ("Likos"), and in support states:

2

## NATURE OF THE ACTION

1.      This is an action for fraud, conspiracy, conversion, unjust enrichment, and breach of fiduciary duty.

2.      The claims arise from a fraudulent investment scheme masterminded and implemented by Masters, a resident of Collier County, Florida.

3.      Like all great schemes, at its core, it was simple: a) get monies transferred under some fraudulent pretext, b) divert monies for personal use, and c) when challenged create a false narrative and fake paper trial.

4.      Masters at times did business as SN-SCP, LLC and, non-party SCP-SN Advisory, but there are several entities associated with his name, including GIG and CW Financial.  Masters conspired with individuals and entities located in Florida, including Renaissance FL and Likos, to defraud The Panda Trust out of millions of dollars of funds.  The Panda Trust monies were held in trust and ultimately they should have been returned or transferred to the successor Trustee, the Plaintiff Winchester.

5.      Masters initially diverted The Panda Trust's funds to Renaissance FL, Renaissance LLC, Likos, and then to Masters individually, and to companies controlled by Masters.

6.      Masters, Renaissance FL, Renaissance LLC, and Likos formed and executed the conspiracy to defraud and misappropriate The Panda Trust monies in

3

large part from Naples, Florida and other Florida-based venues, including Palm Beach.

7.      From approximately 2011 to the winter of 2020, Masters held himself out as a tax specialist who assisted UK pensioners with converting their pensions to insurance policy vehicles to legally and permissibly lower their tax burden.

8.      Unbeknownst to Plaintiff, Masters had a history of living opulently off of the hard-earned monies of others, promising them great returns from investments in legally and permissible ways to lower their tax burdens, but in reality, these schemes were merely vehicles for Masters to enrich himself at the expense of others.

9.      Masters, SN-SCP, CW Financial, GIG, re, Renaissance FL, and Renaissance LLC used corporations both domestic and foreign, to lend an air of legitimacy to the fraudulent schemes.

## THE PARTIES

10.     Plaintiff, Winchester Global Trust Company Limited ("Winchester") is a foreign company organized and existing under the laws of Bermuda, with an address of Williams House, 2nd Floor, 20 Reid Street, Hamilton HM11 Bermuda.

11.     At all times herein, Winchester has been in the trust administration business.

12.     Winchester has recently become the lawfully-appointed successor

Trustee of The Panda Trust, a trust governed by the laws of the Isle of Man, with an effective date of May 26, 2020.

13.     Winchester has authority to pursue actions to recover the monies misappropriated by Defendants, and intended to be put under the control of Winchester.

14.     Defendant Masters is an adult individual and at all times relevant has resided in Collier County, Florida.

15.     Defendant, SN-SCP, LLC, ("SN-SCP") is a Florida limited liability company with its principal place of business located at 13180 Livingston Road, Suite 201, Naples, Florida 34109.  Upon information and belief, SN-SCP LLC was used by Masters to lure away The Panda Trust monies.

16.     Masters is the managing member of SN-SCP which has purported to have beenin the business of asset protection, investment advice and tax planning services.[1]

17.     On Masters' web page, Masters represents to the public that he is a leading planner, among other things:

---

[1] Masters is listed as the manager of SN-SCP on the company's 2021 annual report filed with the Florida Secretary of State.

HSM  1600 Ponce De Leon Blvd., Suite 1205, Coral Gables, FL 33134  |  305-800-4476



## Neil Masters

Neil is considered one of the UK's and Europe's leading planners. His talent excels in the structuring of tax mitigation and asset protection arrangements, specializing in providing global tailored structured solutions for clients and their businesses worldwide. He founded Mercury Tax in 2003, trading out of Leeds, London, Ireland, Jersey, and Monaco assisting his contacts in completing oil, gold, and property deals in the UK, Europe, and beyond. Since then, his global solutions have been requested around the world and have given SN Advisory a truly global client base.

Neil is a qualified solicitor who maintains his practicing certificate in the UK, qualifying into the profession with a UK-based commercial law firm.  Neil has also worked for Arthur Anderson, DLA Piper, Squire Saunders, and was a partner and Head of Tax at Nelson and Co, working over the years for both corporations and individuals. Neil believes in and expects his team to deliver quality service and products to clients. Presently, Neil splits his time between the United States and Monaco and supports the team in England and Ireland as required.

18.     Masters uses his bona fides and background to lend legitimacy to his claims of business acumen and to attract clients to his investment and tax avoidance schemes.

19.     Masters advertises on the web the following regarding his wealth strategies:



## Innovative Planning Solutions

Our innovative planning solutions cover all the major taxes, sales, and marketing initiatives required for strategic growth. We advise clients on the structure of their individual, family, and business affairs, whether in the UK or abroad.  A genuinely joined-up service, with in-house legal counsel, our clients are involved every step of the way.  We work closely with your existing advisors to ensure that you receive fully rounded and coordinated advice.



20.    Upon information and belief, Masters advised clients on asset protection and tax and investment strategies including the transfer of pensions to a Qualifying Recognized Overseas Pension Schemes ("QROPS"), transfer of assets to foreign discretionary trusts, and the investment of trust funds in private placement insurance (PPLIs) policies.

21.    QROPS are overseas pension schemes into which UK pensions are

7

transferred and have tax advantages for clients with UK pensions who are thinking of moving abroad or already live overseas.

22.     PPLI policies are life insurance policies designed for high wealth investors to manage tax liability.

23.     Defendant, CW Financial Consulting LLC ("CW Financial"), is a Florida limited liability company with its principal place of business at 9180 Galleria Court, Suite 800, Naples, Florida 34109.  Upon information and belief, CW Financial was used to lure money away from Winchester.

24.     Masters is the authorized member and the manager of CW Financial.

25.     Defendant, Granite Investments Global US, LLC ("GIG"), is a Florida limited liability company, with its principal place of business at 13180 Livingston Road, Suite 201, Naples, FL 34109.  Upon information and belief, GIG was used to lure The Panda Trust monies away.

26.     Masters is the manager of GIG.

27.     On information and belief, Masters is the principal of both CW Financial and GIG, a member and manager of both companies, and exerts complete control over both Defendants.

28.     Defendant, Renaissance Consulting FL, LLC ("Renaissance FL"), is a Florida limited liability company, with its principal place of business located in Miami-Dade County, Florida.  Upon information and belief, Renaissance FL was

8

used to lure The Panda Trust monies away.  Steven P. Likos is manager of Renaissance FL.

29.     Defendant Renaissance Consulting, LLC ("Renaissance LLC") is a Pennsylvania limited liability company, with its principal place of business located in Delaware County, Pennsylvania.  Upon information and belief, Renaissance LLC was used to lure The Panda Trust monies away. Steven P. Likos is manager of Renaissance LLC.

30.     The Renaissance entities' website provides:



31.     Renaissance also advertises to the public that:



32.     Upon information and belief, Defendant, Steven Paris Likos, is an individual residing in Palm Beach County, Florida.

33.     Likos holds himself out at as a Managing Principal of Renaissance on Linkedin:



34.     Likos further holds himself out as the Managing Principal of Renaissance FL in Florida.

35.     Likos also holds himself out to the public on the Renaissance entities' website as the Managing Principal:



36.     On information and belief, Likos exerts complete control over both Renaissance FL and Renaissance LLC (collectively, "Renaissance.").

37.     Although Renaissance LLC was incorporated in 2016 and

Renaissance FL was incorporated in 2019, upon information and belief both entities were used to lure monies away from The Panda Trust, of which Winchester is now the current trustee.

### NON-PARTY

38.     Upon information and belief, SCP SN Advisory ("SN Advisory"), a non-party a company previously registered in Monaco, but is now deregistered, with its principal place of business formerly listed as Le Panorama 57 Rue Grimaldi, Monte Carlo, Monaco, MC9800.   An internet search of this address, however, demonstrates that this is a high-rise residential building in Monte Carlo and there are many businesses that list their addresses in this building.   See photograph below:



12

39.     Upon information and belief, SN Advisory does not maintain an actual office in Monaco, and the address listed is essentially a postal address.

40.     Upon information and belief, SN Advisory was and/or is controlled and operated by Masters from Collier County, Florida.

41.     Masters' LinkedIn account states that he is the "Senior Partner" of 'SN Advisory" and indicates that he is located in Naples, Florida.

42.     Masters' automated signature block on e-mail communications lists him as the Chief Executive, SN SCP Group of Companies.

43.     SN Advisory, like Defendant SN-SCP, has purportedly been in the business of asset protection, investment advice and tax planning services.

44.     Upon information and belief, Masters is the principal of both SCP-SN and SN Advisory, a member and manager of both companies, and exerts complete control over both entities

45.     Letterhead for SN-SCP LLC states: "SN-SCP LLC is the USA Office of SCP Group of Companies also in Monaco, Ireland and the UK."

### <u>JURISDICTION AND VENUE</u>

46.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 as there is complete diversity because Plaintiff is a citizen of Bermuda, and Defendants are U.S. Residents and/or citizens of Florida, and Pennsylvania, and the amount in controversy exceeds $75,000.00.

HSM 1600 Ponce De Leon Blvd., Suite 1205, Coral Gables, FL 33134  |  305-800-4476

47.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and on the grounds that: (i) Defendants are subject to personal jurisdiction in this District; (ii) some Defendants (Masters, SN-SCP, CW Financial, and GIG) reside and/or maintain a place of business in this District; (iii) Defendants regularly do and solicit business in this District; and (iv) a substantial part of the events or omissions giving rise to this action took place in this District. Moreover, Masters, the mastermind of the fraudulent investment scheme that serves as the basis of the claims herein, planned, orchestrated, conspired and carried out that fraudulent scheme from this District.

## FACTS COMMON TO ALL CLAIMS

### A.     *Plaintiff begins its relationship with Masters.*

48.     Early last decade, Gianfranco ("John") Grillo was introduced to Darren Neil Masters and sought Masters' services.

49.      A few years ago, Masters through SN Advisory began providing advice to Mr. Grillo in connection with placement of significant funds the Grillo family had amassed.

50.     Masters advised Mr. Grillo to establish a discretionary trust for the benefit of Mr. Grillo and his family, and to transfer into the trust certain of Mr. Grillo's assets including cash, debt instruments and other assets.

51.     Master explained to Mr. Grillo how moving the money into trust

would change the Grillo's holdings and avoid taxes, including U.K. inheritance taxes:



Masters also explained why the trust should be formed in the Isle of Man:

SN ADVISORY

### Asset Protection Summary

**Why an offshore trust?**

The trust is a "non-resident trust" which means that none of the trustees is resident in the UK for tax purposes. This means that the trust itself is outside the jurisdiction of the UK tax authorities.

**We normally use Isle of Man Trustees**

We normally use the Isle of Man as not only is it successful offshore centre in its own right but it also offers the following benefits:

- The Isle of Man is a low-tax economy with no capital gains tax, wealth tax, stamp duty, or inheritance tax and a top rate of income tax of 20%. The rate of corporation tax or income tax is 0% which applies to trusts with no IOM beneficiaries.

- It is a self-governing British Crown Dependency, and is part of the British Isles.

- It is located in the Irish Sea between the islands of Great Britain and Ireland and so is easily accessible from the UK.

- The official currency is the Manx pound but Pound sterling is also used.

**B.    *The Panda Trust is formed for the benefit of Mr. Grillo, his spouse and their descendants.***

52.    Following Masters' advice, The Panda Trust was established on April 1, 2015, by the Bourse Trust Company Limited (Guernsey), as Trustee of the International Services Benefit Trust.

53.    Masters was directly involved in the creation of The Panda Trust.

54.    On May 6, 2015, Bourse Trust Company Limited retired as Trustee of The Panda Trust and Aspire Trustees Limited (Isle of Man) ("Aspire") was appointed as the new Trustee.

55.    On May 27, 2015, The Panda Trust was funded.  On February 19, 2016, approximately $4 million dollars was transferred by Aspire into an account established in the name of The Panda Trust with St. James Place Wealth

Management in the UK.  Apparently, those monies remained invested through at least June of 2017.

| International Trustee Bond - C1035781G | |
| --- | --- |
| Investor | Trustee of The Panda Trust |
| Commencement Date | 19 Feb 2016 |
| Total Invested | £3,200,000 |
| Total Withdrawn | £33,930 |
| Current Unit Value | £3,948,943 |
| Current Encashment Value | £3,761,607 |
| Net Change | £782,873 |

56.     In or about 2019, Aspire Trustees Limited became Oak Trustees Limited (Isle of Man)("Aspire/Oak").

57.     Aspire/Oak were Trustees of The Panda Trust during a five-year period between May 2015 and May 2020.

58.     On May 26, 2020, Oak Trustees Limited retired as Trustee of The Panda Trust and Plaintiff Winchester was appointed as Trustee.

**C.   *Masters Suggests PPLI Policy as asset protection for Grillo Family and sets up mechanism to misappropriate client funds.***

59.     In approximately 2018, Masters and SN-SCP LLC advise Aspire that a PPLI policy be established "to hold the assets of The Panda Trust" as a "long term asset protection for the Grillo Family."

60.     As explained earlier, PPLI policies can be legitimate investments

often used by high wealth individuals and families.

61.     Masters proposed that the Trust use the funds held in cash (after redemption of a bond) and the assignment of loans currently owed to the Trust to pay the premium for the PPLI policy.

62.     The policy was contemplated to insure both Mr. John Grillo and Mrs. Loredana Grillo's life.

63.     Upon information and belief, Masters was then to secure a commitment from Advantage Life Assurance I.I. ("Advantage") to issue a PPLI policy to insure Mr. and Mrs. Grillo's life in exchange for a premium composed of a loan facility and cash totaling approximately GBP 3.6 Million.

64.     Preparations were made by Aspire/Oak to pay the premiums for the Advantage PPLI policy.

65.     Thereafter, Aspire/Oak was advised that the monies would need to be held in escrow by Defendants Renaissance and Likos for the tax scheme to come to fruition.  The real purpose, however, of the monies being sent to escrow with Renaissance and Likos was to accomplish fraud and misappropriate the monies.

66.     On October 16, 2018, Aspire/Oak, as Trustee of The Panda Trust, and Advantage executed a Deed of Assignment, Consent and Acceptance allegedly in favor of Advantage.  The deed transferred the rights and obligations of a loan facility held by The Panda Trust and valued at GBP 7,142,164.54, as partial

consideration for the purchase of the contemplated PPLI policy.

67.    Later, on November 9, 2018, over $4 million dollars was transferred to Renaissance's account at Bank of America for the purpose of holding the funds pending the placement of the PPLI policy by Advantage.  A copy of the Bank of America Account Statement for November 1-30, 2018, is copied in part below and shows the transfers of funds:

**Deposits and other credits**

| Date | Description | Amount |
|------|-------------|--------|
| 11/09/18 | WIRE TYPE:FX IN DATE:181109 TIME:0502 ET TRN:2018110800269758 FX:GBP 3617037.50 1.29574 ORIG:ASPIRE TRUSTEES LTD ATO T ID:GB51RBOS16588058 ORIG BK:RBS INTERNATIONAL (ISLE OF MA ID:RBOSIMDX PMT DET:PANDA TRUST | 4,686,740.17 |
| **Total deposits and other credits** | | **$4,686,740.17** |

68.    Once Advantage was ready to issue the PPLI policy, Renaissance was to transfer the funds to Advantage as partial payment of the policy premium.  This never happened.

**D.    *Masters and Likos Misappropriate Panda Trust Funds and Create an Elaborate Paper Trail to Cover up the Activities.***

69.    The transfer of The Panda Trust funds to Renaissance proved to be a ruse by Masters that allowed him and his controlled companies, with the assistance of Likos and Renaissance, the opportunity to misappropriate The Panda Trust monies.  The transfer of funds touched off an elaborate shell game designed to misappropriate The Panda Trust monies and enrich Defendants.

HSM 1600 Ponce De Leon Blvd., Suite 1205, Coral Gables, FL 33134  |  305-800-4476

70.     Once the funds were transferred, Likos, inexplicably, gave Masters access to more than $4 million of The Panda Trust monies entrusted to Renaissance.   The misappropriation began the very day that The Panda Trust funds were deposited in the Renaissance account.

71.     On information and belief, Defendants created a paper trail to lend an air of legitimacy to their misappropriation of funds.  This included the creation of a false escrow agreement with a forged signature and at least three loan agreements between Renaissance and Masters.

72.     Masters and Likos conspired to create a fraudulent "escrow agreement" between "Renaissance Consulting LLC on behalf of Advantage Life Assurance I.I. ( 'Escrow Agent')" and Mr. and Mrs. Grillo, as "Insured Applicant."

73.     The escrow agreement, dated October 30, 2019, bears a signature purporting to be that of Mrs. Grillo, but the signature is a forgery.

74.     Mrs. Grillo was not aware of the existence of the agreement at the time of its alleged signing, and never signed the agreement.   In fact, on October 30, 2019 – the alleged date of the agreement – Mrs. Grillo was moving her terminally ill husband, Mr. Grillo, into hospice care where he passed away a mere three days later.

75.     Masters and Likos erred when they included Mrs. Grillo as a party to the escrow agreement.  On the date of the alleged agreement, October 30, 2019,

Aspire/Oak was the Trustee of The Panda Trust.  This fact was well known by both Masters and Likos, as Aspire/Oak, arranged for the transfer of the monies from The Panda Trust to Renaissance.   Because the funds in Renaissance's possession were owned by the then trustee of The Panda Trust, neither Mr. Grillo nor Mrs. Grillo had the requisite authority to contract with respect to the funds that were only held in trust for their benefit.

76.     The escrow agreement reveals that Masters and Likos knew that the funds in Renaissances' possession were intended to be sent to Advantage.

77.     Thereafter, three loan agreements were signed by Defendants Masters and Likos on or about November 1, 2019, and appear to have been intentionally backdated to earlier in 2019 to cover up the misappropriation of The Panda Trust monies dating back to Renaissance's receipt of the funds in November 2018.

78.     The first loan agreement, between Defendants Renaissance and CW Financial, appears to have been signed on November 1, 2019, but backdated to May 1, 2019.

79.     The second loan agreement, also between Defendants Renaissance and CW Consulting, appears to have been signed on November 1, 2019, but backdated to June 1, 2019.

80.     A third loan agreement, this one between Defendants Renaissance and GIG, appears to have been signed on November 1, 2019, but backdated to July

HSM 1600 Ponce De Leon Blvd., Suite 1205, Coral Gables, FL 33134  |  305-800-4476

1, 2019.

81.   All three improper loan agreements directed Masters to "invest" the loaned funds in any manner Masters saw fit.

82.   Masters did not have authority to use the monies in the manner that he did and no reasonably prudent person would have used them in the manner that Masters did.  Therefore, any investments made by Masters were improper.

83.   The first transfers of The Panda Trust monies from Renaissance to Masters took place in November 2018, long before the alleged execution of the fraudulent escrow agreement (October 30, 2019) or the execution of the three loan agreements (November 1, 2019).  Therefore, Likos began transferring The Panda Trust monies from Renaissance to Masters with full knowledge that Likos, Renaissance and Masters did not have Plaintiff's authorization or consent.

84.   Below is a brief summary of the illegal transfers that began immediately:

22

| 09/11/18 | Panda Neil Masters Payment | $(470,000) |
| 09/11/18 | Online banking transfer to CHK 6670 | $(193,000) |
| 11/12/18 | Granite Investment Global (Neil Loan) | $(50,000) |
| 12/14/18 | Inverso Law Group BVI Investment (Neil Loan) | $(100,000) |
| 12/26/18 | CW Investment (Neil Loan) | $(25,000) |
| 12/31/18 | Empower Therapy Bus Investment (GIG Neil Loan) | $(100,000) |
| 09/01/19 | Carwash Medics Inv (Neil Loan) | $(55,000) |
| 01/02/19 | Inverso Investment (Neil Loan) | $(250,000) |
| 02/27/19 | Empower Medical Bus Inv (Neil) | $(100,000) |
| 01/03/19 | Gig Qrop Inv (Neil Loan) | $(150,000) |
| 08/03/19 | Darren Inverso Investment | $(400,000) |
| 08/03/19 | Darren Inverso Inv 2nd payment | $(40,000) |
| 03/27/19 | GIG Qrop Inv (Neil Loan) | $(200,000) |
| 03/28/19 | Gig Investment (Neil Loan) | $(40,000) |
| 02/05/19 | Masters House Inv (Neil Loan) | $(50,000) |
| 08/05/19 | Masters Loan to be repaid tomorrow | $(200,000) |
| 05/16/19 | Online banking tranfser from CHK6609 | $200,000 |
| 05/17/19 | Fund Transfer | $200,000 |
| 05/17/19 | Masters House Inv (Neil Loan) | $(950,000) |
| 05/17/19 | Masters House Inv (Neil Loan) | $(950,000) |
| | | $(3,923,000) |

85.     Multiple transfers were made to Masters' entity, Granite Investments Global and/or "GIG" which has never had any agreements with Plaintiff allowing payments to GIG.

86.     As a result of these illegal transfers Defendants profited.

87.     These illegal transfers were not authorized by Plaintiff.

88.     Defendants kept the illegal transfers hidden from Plaintiff, who did not come to learn of the existence of the illegal transfers until October 2020.

E.      *Defendants keep all relevant information of their misappropriation of funds hidden from Plaintiff and mislead Plaintiff to divert its attention.*

89.     Over the course of approximately two years following the transfer of The Panda Trust monies to Renaissance, Winchester, through representatives repeatedly asked Masters and Likos to provide information regarding the status of The Panda Trust funds, yet to this day Masters and Likos have consistently

failed to provide Plaintiff with a proper accounting of the funds.  Rather, Masters and Likos consistently misled Plaintiff and their representatives regarding the status of the funds.

90.    By way of example, to cover up the illegal transfers, Masters transmitted an apparently false statement of account from Corinthian Pension Trustees Limited, a financial firm located in Gibraltar ("Corinthian").    The statement, dated June 30, 2019, lists The Panda Trust as the named client on the account.  The statement lists the starting balance of the account for the period as GBP 3,617,037.50.   The statement further reflects that the monies earned GBP 109,510.10 during the statement period.

91.    Upon information and belief, this statement was created to mislead Plaintiff and its representatives into believing that the funds were securely invested.  At the time he transmitted the Corinthian statement, Masters knew it to be false as Masters had already misappropriated The Panda Trust funds from the Renaissance escrow account with Likos' assistance.

92.    On information and belief, no funds from The Panda Trust were ever deposited with Corinthian.

93.    On October 5, 2020, Masters changed the story as to the whereabouts of monies from The Panda Trust and admits to borrowing monies to purchase a house in Naples, Florida.

24

94.     On October 5, 2020, consultants to The Panda Trust became aware that the monies had been misappropriated.

95.     In an e-mail dated October 5, 2020, Masters admitted that Masters had borrowed $1.7 million from Renaissance to pay for his personal home.

96.     In another series of emails dated October 6, 2020, Masters claimed to have invested The Panda Trust monies to deliver a return while the monies were waiting for transfer to Advantage.  In the same e-mail chain Masters provided a vague list of investments including:  1) unidentified investment property; 2) an unidentified physical therapy business; 3) an unidentified car wash business; 4) investment in unidentified land for development and 5) a restaurant identified as Oak and Stone.

97.     By reply e-mail on the same date, Winchester's agent demanded more information on the alleged investments including: 1) names of the businesses, 2) current accounts for each; 3) the amount of investment in each; 4) the repayment terms of each; 5) security given for each; 6) due diligence that was conducted on each.  Finally, Winchester's agent demanded to know why Masters had used the monies of others without Plaintiff's knowledge or permission.  Masters replied that he would supplement the information but he never provided the information.

98.     On June 3, 2021, Robert Tailford from Plaintiff Winchester e-mailed Likos (copying others at Winchester and Winchester's agent) requesting the dates

and amounts of all transfers in and out of the Renaissance escrow account related to The Panda Trust.  Specifically, Mr. Tailford asked for bank statements showing the transfers and for the name of the person who instructed Renaissance to make the transfers.  Likos replied that Masters gave all instructions for the transfers and that, he, Likos, did not have any contract related to The Panda Trust.  In the same e-mail exchange Likos did not provide the requested information but instead directed Tailford to get it from Winchester's agent.  Winchester's agent replied to the group telling Likos to send the bank statements showing the transfers in and out of the Renaissance account.  Likos sent only a single bank statement from November 2018, and at the same time claimed to be having computer trouble that did not allow him to access email any further back than March 2019.  No other bank statements have been provided by Likos to Plaintiff.

**F.      *Masters and Likos have not returned millions of dollars of The Panda Trust funds that they misappropriated.***

99.     As of today, despite numerous and repeated demands over the course of approximately two years, no valuations or accounting have been provided by Masters.

100.    In total, more than $4 million dollars was transferred to Renaissance by Aspire/Oak, predecessor to Winchester.

101.    Despite the repeated requests of Masters and Likos made over approximately two years, the majority of the monies placed with Renaissance have not

been tracked, accounted for, or returned.

102.   As such, Defendants are in possession and custody of Plaintiff's funds which total several million dollars.

### COUNT I--FRAUD
### (All Defendants)

103.   Plaintiff repeats the general factual allegations contained in paragraphs 1 through 102 above as if fully set forth at length herein.

104.   This is a cause of action seeking money damages against all Defendants for fraud.

105.   Masters acting on his own behalf, on behalf of Defendant SN-SCP, GIG and CW Financial caused Aspire/Oak to transfer The Panda Trust funds to Renaissance to be held in escrow until such time as Advantage was ready to place the policy and the partial premium payment was due.

106.   Masters acting on his own behalf, on behalf of Defendant SN-SCP, GIG and CW Financial represented to Aspire/Oak that The Panda Trust funds would be transferred to Advantage to pay the PPLI policy premium.

107.   Masters, SN-SCP, GIG, CW Financial, Likos, and Renaissance, made representations to Aspire/Oak that they would have The Panda Trust funds transferred to Advantage in accordance with the agreed upon plan to induce Aspire/Oak to transfer the funds to Renaissance where Likos, Masters, SN-SCP, GIG and CW Financial would be able to access them.

27

108.    Unbeknownst to Plaintiff, Defendants took steps to divert The Panda Trust funds to Masters, Likos, Renaissance, SN-SCP, CW Financial, and GIG instead of holding the funds and later transferring those funds to Advantage.

109.    Masters acting on his own behalf and on behalf of SN-SCP, CW Financial, GIG and Likos acting on his own behalf and on behalf of Renaissance, knew that at the time the representations were made that they did not intend to transfer The Panda Trust funds to Advantage but instead intended to secretly and without authority misappropriate the funds.

110.    Defendants, intentionally and knowingly made the material misrepresentations to the Trustee to have the funds held by Renaissance and transferred to Advantage to induce the Trustee to transfer the funds to Renaissance.

111.    Defendants intended that the Trustee would rely upon their material misrepresentations to induce it to agree to transfer the funds to Renaissance.

112.    The Trustee reasonably relied upon Defendants' material misrepresentations when it agreed to transfer The Panda Trust funds to Renaissance for the purpose of having them transfer the funds to Advantage in accordance with their agreed upon plan.

113.    Instead, Masters acting on his own behalf and on behalf of the SN-SCP, CW Financial and GIG, and Likos acting on his own behalf and on behalf of Renaissance, forged Mrs. Grillo's signature on a false escrow agreement to provide

28

authority for Renaissance and Likos to enter into three separate loan agreements – two involving Masters and CW Financial and one involving Masters and GIG – which then caused The Panda Trust funds to be transferred from Renaissance to Masters and his controlled companies where the funds were under Masters' custody and control.

114.   When confronted about their actions regarding The Panda Trust funds, Defendants simply lied and delayed providing information to Plaintiff for more than two years.

115.   Despite demands by Plaintiff for an accounting and return of the funds, Defendants have refused to do either.

116.   As a result of the fraudulent misappropriation of funds by Defendants, Plaintiff in its capacity as trustee of the Panda Trust has been damaged, the exact amount to be determined at trial.

117.   The actions of Masters, individually and on behalf of SN-SCP, CW Financial and GIG; and Likos, individually and on behalf of Renaissance were of such a willful, wanton and malicious nature that Plaintiff is entitled to an award of punitive damages to deter the Defendants and others similarly situated from engaging in such conduct in the future, the amountof such punitive damages to be determined at trial.

WHEREFORE, Plaintiff respectfully demands, judgment for compensatory

HSM 1600 Ponce De Leon Blvd., Suite 1205, Coral Gables, FL 33134  |  305-800-4476

and punitive money damages, including pre-judgment and post-judgment interest and the costs of this suit, against Defendants in an amount to be decided at trial along with temporary and permanent injunctive relief and for any and all such further relief as this Court deems necessary and appropriate.

## COUNT II — CONSPIRACY TO DEFRAUD
### (All Defendants)

118.   Plaintiff repeats the general factual allegations contained in paragraphs 1 through 102 above as if fully set forth at length herein.

119.   This is a cause of action seeking money damages against all Defendants for their conspiracy to defraud Plaintiff.

120.   Defendants were engaged in a conspiracy to defraud Plaintiff to fraudulently misappropriate The Panda Trust funds.

121.   Masters, acting on his own behalf and on behalf of SN-SCP, CW Financial, GIG acting in furtherance of the conspiracy caused Aspire/Oak to transfer The Panda Trust monies to Renaissance to be held in escrow until such time as Advantage was ready to place the policy and the partial premium payment was due.

122.   Masters acting in furtherance of the conspiracy represented to Aspire/Oak that once the monies were received by Renaissance, The Panda Trust funds would be transferred to Advantage to pay the PPLI policy premium.

123.   Masters, SN-SCP, CW Financial, GIG, Likos, and Renaissance acting

30

in furtherance of the conspiracy made representations to Aspire/Oak that they would have The Panda Trust funds transferred to Advantage in accordance with the agreed upon plan to induce Aspire/Oak to transfer the funds to Renaissance where Likos, Masters, SN-SCP, GIG and CW Financial would be able to access them.

124.   Unbeknownst to Plaintiff, Defendants, in furtherance of the conspiracy, forged Mrs. Grillo's signature on a false escrow agreement to provide false authority for Renaissance and Likos to enter into three separate improper loan agreements – two involving Masters and CW Financial and one involving Masters and GIG – which then caused The Panda Trust funds to be transferred from Renaissance to Masters and his controlled companies where the funds were under his custody and control.  This was done in lieu of transferring The Panda Trust funds from Renaissance to Advantage as had been agreed to with the Trustee of The Panda Trust.

125.   Defendants, in furtherance of the conspiracy, forged the escrow agreement and later entered into the three loan agreements for the purpose of diverting The Panda Trust funds to Masters' custody and control instead of transferring those funds to Advantage to pay the partial premium for the PPLI policy insuring the lives of Mr. Grillo and Mrs. Grillo.

126.   Defendants fraudulently conspired and agreed to divert The Panda

Trust funds to Masters and his controlled companies in direct contravention of the agreed upon plan with the Trustee.

127.   In furtherance of the conspiracy, Defendants misappropriated The Panda Trust funds by transferring said funds to Masters and his controlled companies without authority and in an effort to place such funds beyond the reach of Plaintiff.

128.   Defendants agreed among themselves to engage in unlawful acts and all undertook actual and overt actions in furtherance of the conspiracy.

129.   As a result of the Defendants' fraudulent conspiracy to misappropriate The Panda Trust funds, Plaintiff has been damaged, the exact amount to be determined at trial.

130.   The actions of the Defendants were of such a willful, wanton and malicious nature that Plaintiff is entitled to an award of punitive damages to deter the Defendants and others similarly situated from engaging in suchconduct in the future, the amount of such punitive damages to be determined at trial.

WHEREFORE, Plaintiff respectfully demands judgment for compensatory and punitive money damages, including pre-judgment and post-judgment interest and the costs of this suit, against all Defendants in an amount tobe decided at trial along with temporary and permanent injunctive relief and for any and all such further relief as this Court deems necessary and appropriate.

## COUNT III—CONVERSION
**(All Defendants)**

131.    Plaintiff repeats the general factual allegations contained in paragraphs 1 through 102 above as if fully set forth at length herein.

132.    This is a cause of action seeking money damages against all Defendants for their conversion of the Clients' funds.

133.    Masters acting on his own behalf and on behalf of Defendant SN-SCP, CW Financial and GIG caused Aspire/Oak to transfer The Panda Trust funds to Renaissance to be held in escrow until such time as Advantage was ready to place the policy and the partial premium payment was due.

134.    Masters acting on his own behalf and on behalf of the SN-SCP, CW Financial and GIG represented to Aspire/Oak that once the monies were received by Renaissance, The Panda Trust funds would be transferred to Advantage to pay the PPLI policy premium.

135.    Masters, SN-SCP, CW Financial, GIG Likos, and Renaissance made representations to Aspire/Oak that they would have The Panda Trust funds transferred to Advantage in accordance with the agreed upon plan to induce Aspire/Oak to transfer the funds to Renaissance where Likos, Renaissance, Masters, SN-SCP, GIG and CW Financial would be able to access them.

136.    As set forth more fully above, Defendants forged Ms. Grillo's signature on a false escrow agreement to provide false authority for Renaissance

33

and Likos to enter into three separate loan agreements – two involving Masters and CW Financial and one involving Masters and GIG – which then caused The Panda Trust funds to be transferred from Renaissance to Masters and his controlled companies where the funds were was under his custody and control. This was done in lieu of transferring The Panda Trust funds from Renaissance to Advantage as had been the agreement with the Trustee on behalf of The Panda Trust.

137.   Plaintiff entrusted the Defendants with The Panda Trust funds and Defendants misappropriated those funds in a manner that is inconsistent with the purposes for which Plaintiff entrusted them with the funds.

138.   Defendants misappropriated these funds without Plaintiff's consent and without giving them consideration in return.

139.   By engaging in the above-described actions, Defendants exerted dominion and control over The Panda Trust funds in a manner inconsistent with and adverse to the rights of their true owner.

140.   By converting The Panda Trust funds, Defendants intentionally, wrongfully, and maliciously deprived the Plaintiff of its rightful possession of the funds in reckless disregard for their rights.

141.   Plaintiff has the right to immediate possession of the above- described converted funds and have made demands for same, but Defendants have refused

34

to return any such funds to Plaintiff.

WHEREFORE, Plaintiff respectfully demands judgment against Defendants for Defendants' conversion of The Panda Trust funds, and awarding Plaintiff damages related to same, including pre-judgment and post-judgment interest and the costs of this suit, and for any and all such further relief as this Court deems necessary and appropriate.

## COUNT IV — BREACH OF FIDUCIARY DUTY
### (All Defendants)

142.   Plaintiff repeats the general factual allegations contained in paragraphs 1 through 102 above as if fully set forth at length herein.

143.   This is a cause of action seeking money damages against Defendants for their breach of their fiduciary duty owed to Plaintiff.

144.   Plaintiff and Defendants share a special relationship whereby Plaintiff reposed trust and confidence in Defendants, and Defendants undertook such trust and assumed a duty to advise counsel and protect the Plaintiff.

145.   Defendants breached their duties to Plaintiff by committing various acts described above, including but not limited to:

     i.    Misappropriating The Panda Trust Funds;

     ii.   Forging an escrow agreement;

     iii.  Entering into improper loan agreements;

     iv.  Creating a false account statement;

35

v.  Refusing to provide information to Plaintiff regarding the whereabouts of The Panda Trust funds;

vi.  Refusing to provide an accounting of The Panda Trust funds; and

vii.  Refusing to return The Panda Trust funds.

146.   Defendants' breach caused Plaintiff to suffer Damages in excess of $4 million dollars.

WHEREFORE, Plaintiff respectfully demands judgment against all Defendants (see above) for Defendants' breach of fiduciary duties, and awarding Plaintiff damages related to same, including pre-judgment and post-judgment interest and the costs of this suit, and for any and all such further relief as this Court deems necessary and appropriate.

## COUNT V — UNJUST ENRICHMENT
### (All Defendants)

147.   Plaintiff repeats the general factual allegations contained in paragraphs 1 through 102 above as if fully set forth at length herein.

148.   This is a cause of action for unjust enrichment against all Defendants, and it is being pled in the alternative to all other Counts contained herein.

149.   As set forth more fully above, Plaintiff entrusted Defendants with the Clients' funds for the purpose placing them in a PPLI.

150.   Defendants have misappropriated and converted The Panda Trust funds for their sole and exclusive benefit in a manner that is inconsistent with the

36

purposes for which Plaintiff entrusted them with the funds without Plaintiff's consent and without giving them consideration in return.

151.   Accordingly, Defendants have knowingly accepted and benefitted from the use and benefit of The Panda Trust funds and are aware of the receipt, use, and retention of such funds.

152.   Defendants received the above-described benefits to the detriment of Plaintiff who no longer has access to or the ability to use The Panda Trust funds.

153.   Defendants' continued retention and use of The Panda Trust funds to the detriment of Plaintiff is inequitable.

154.   Plaintiff has no adequate remedy at law as against Defendants.

155.   As a result of the above-described unjust enrichment, Plaintiff has sustained damages in an amount to be determined at trial and seek full disgorgement and restitution of all unjust enrichment, benefit, and gains acquired by Defendants as a result of the retention of The Panda Trust funds.

WHEREFORE, Plaintiff respectfully demands judgment against Defendants for Defendants' unjust enrichment, and awarding Plaintiff damages related to same, including pre-judgment and post-judgment interest and thecosts of this suit, and for any and all such further relief as this Court deems necessary and appropriate.

Dated: March 24, 2022

37

Respectfully submitted,

**HEISE SUAREZ MELVILLE, P.A.**
1600 Ponce De Leon Boulevard
Suite 1205
Coral Gables, Florida 33134
Telephone (305) 800-4476

By: */s/ Patricia Melville*
Patricia Melville
Florida Bar No. 475467
pmelville@hsmpa.com
Mark J. Heise
Florida Bar No. 771090
mheise@hsmpa.com
Luis E. Suarez
Florida Bar No. 390021
lsuarez@hsmpa.com

*Attorneys for Plaintiff*